IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JILL MOORE and JIM MOORE, | ) | |
| as Statutory Beneficiaries of A.M., | ) | |
| and on behalf of the Estate of A.M., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 2:12-CV-424-WKW |
| v. | ) | [WO] |
| | ) | |
| CHILTON COUNTY BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves the tragic suicide of a high school-aged girl who on May 18, 2010, jumped to her death from an interstate overpass. Her parents, Jill and Jim Moore, allege that Defendant Chilton County Board of Education knew about, but failed to protect their daughter from, incessant peer-on-peer bullying and disability harassment, and that the Board's failure to act caused their daughter's suicide. Plaintiffs bring constitutional claims under 42 U.S.C. § 1983, and allege violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Before the court is the Board's motion to dismiss (Doc. # 11), which has been fully briefed (Docs. # 12, 16, 17, 18). After careful consideration of the arguments

of counsel and the relevant law, the court finds that the motion is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation and internal quotation marks omitted). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, a court may dismiss a complaint under Rule 12(b)(6) when a dispositive issue of law precludes a plaintiff from maintaining a cause of action on the facts alleged. *See Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).

### III.  BACKGROUND

The following facts, accepted as true, are from the Complaint.  Plaintiffs'
daughter, A.M., was a student at Jemison High School, which was operated by
Defendant Chilton County Board of Education ("Board").   She suffered from
Blount's Disease, a "growth disorder that causes the lower leg to angle inward,
making the person appear bow-legged." (Compl. ¶ 7.)  A.M. also was overweight as
a result of an eating disorder.  Her physical attributes made her a "target for a wide
variety of bullies at school." (Compl. ¶ 13.)  And targeted she was, "virtually every
day." (Compl. ¶ 44.)  Among other things, A.M.'s peers called her cruel names,
"pushed" her, "made fun of her," knocked her books to the floor, and subjected her
to "pig races" on the school bus.[1]  (Compl. ¶¶ 45, 46.)  On one occasion, her
classmates locked her in a janitor's closet and on another occasion, "stripped down"
her pants and underwear in front of other peers.  (Compl. ¶ 45.)

When A.M. complained about the cruel treatment, presumably to her teachers
or other school officials, they "punished" her for having a "bad attitude."  (Compl.
¶ 44.) School personnel punished her by giving her detention and placing her in time-
out.  (Compl. ¶ 60.)  Additionally, although Blount's Disease caused A.M. to be

---

[1] The Complaint describes the "pig races" as a school-bus game in which a high school
senior male grabs an "ugly," "fat" girl and kisses her on the cheek, in front of jeering students.

"unusually slow" (Compl. ¶ 9), rather than accommodate her slowness, teachers punished A.M. for being late to class.

Plaintiffs allege that numerous school administrators, including teachers, witnessed the bullying, and that A.M. reported many of the incidents of bullying, but that no school official did anything to stop it.  The bullying ceased on May 18, 2010, but sadly only because A.M. penned a suicide note and took her own life.

As a result of A.M.'s suicide, Plaintiffs filed this lawsuit against the Board. The Complaint asserts three claims arising under federal law.[2]  In Count I, brought under 42 U.S.C. § 1983, Plaintiffs allege that A.M. had a "right to life" and a "right to bodily integrity" (which included a right "to be free of restraint, punishment, or physical assault and battery by school officials, and by peers"), and that the Board "at a minimum, [was] indifferent to [her] rights."  (Compl. ¶ 48.)  Plaintiffs aver that ultimately, the Board's "informal policy – to fail to train, supervise or monitor [its employees] on the dangers of bullying in school – was a moving force in the eventual suicide of" A.M.  (Compl. ¶ 54.)  This count implicates the substantive component of the Fourteenth Amendment's Due Process Clause.

---

[2] The counts in the Complaint are not numbered.  For ease of reference, the court refers to the claims as "Count I," "Count II," and "Count III."

In Count II, Plaintiffs allege discrimination on the basis of disability, in violation of Section 504 of the Rehabilitation Act ("Section 504"), 28 U.S.C. § 794. Plaintiffs aver that "solely by reason" of A.M.'s disabilities (identified in the Complaint as Blount's Disease and an eating disorder), A.M. was "excluded from the education activity that was available to other students." (Compl. ¶ 58.)  In this count, Plaintiffs contend that A.M.'s disabilities made her an "easy target" of bullying and that the Board "acted in bad faith in failing to provide appropriate and necessary accommodation to allow [A.M.] to receive educational benefits."  (Compl. ¶ 61.) Count III alleges that the same facts that give rise to a violation of Section 504 also constitute a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  Plaintiffs seek compensatory and punitive damages, costs, interest, and attorney's fees.

## IV.  DISCUSSION

The Board asserts six grounds for dismissal of Plaintiffs' Complaint: (1) failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(l); (2) failure to state facts that give rise to a Section 1983 Fourteenth Amendment substantive due process violation; (3) failure to state a claim for disability discrimination under the ADA or Section 504; (4) the absence of a proper party plaintiff; (5) failure of Plaintiffs' claims to survive

A.M.'s death; and (6) the unavailability of punitive damages under the ADA and Section 504. For the reasons to follow, the court finds that grounds (1), (3), (4) and (5) do not warrant dismissal of the ADA and Section 504 claims, but that the ADA and Section 504 preclude the recovery of punitive damages (ground 6). The court further finds that, based upon ground (2), the Section 1983 claim is subject to dismissal.

## A.   <u>The Exhaustion Requirement Under the IDEA</u>

It may seem odd that the discussion begins with the IDEA, given that the Complaint does not include a claim under this federal statute. As explained, however, the claim's absence alone does not foreclose the applicability of the IDEA's administrative exhaustion requirements to Plaintiffs' Section 1983, ADA, and Section 504 claims. Though the Board says the IDEA applies, the court disagrees.

The IDEA "ensure[s] that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1157 (11th Cir. 2006) (citing 20 U.S.C. § 1400(d)(1)(A)). The IDEA does not prevent plaintiffs from bringing claims for "remedies available under the Constitution, [the ADA, Section 504], or other Federal laws protecting the rights of

6

children with disabilities." *Id.* at 1158 (quoting 20 U.S.C. § 1415(l)).  The IDEA requires, however, that prior to bringing such suits under other federal laws, plaintiffs must exhaust the IDEA's administrative remedies under Section 1415(l) to the extent that the claims are "seeking relief that is also available" under the IDEA.  § 1415(l); *see also Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1422 (11th Cir. 1998) (holding that plaintiffs must exhaust IDEA's administrative remedies "before presenting federal claims regarding the denial of publicly financed special education under Section 504 and the ADA"); *see also J.P. v. Cherokee Cnty. Bd. of Educ.*, 218 F. App'x 911, 913 (11th Cir. 2007) ("The exhaustion requirement applies to claims asserting the rights of disabled children under not only the IDEA, but also the ADA, § 504 . . . , and the Constitution." (citing *M.T.V.*, 446 F.3d at 1158)).

Thus, "the philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities."  *M.T.V.*, 446 F.3d at 1158 (citation and internal quotation marks omitted).  However, the exhaustion requirement is not absolute.  "The exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate."  *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996); *see also M.T.V.*, 446 F.3d at 1159.

7

Here, the Board argues that Plaintiffs' ADA and Section 504 claims are disguised IDEA claims because the gravamen of the Complaint is that A.M. had physical disabilities that qualified her for accommodations necessary to provide her an appropriate and safe educational environment. Thus, the Board contends that these claims are subject to the IDEA's requirement that litigants exhaust administrative procedures prior to bringing suit. Plaintiffs do not dispute the Board's characterization of their ADA and Section 504 claims,[3] and they concede that they did not pursue administrative remedies. Instead, Plaintiffs contend that IDEA exhaustion is not required (1) because they are seeking monetary damages, which are "not an IDEA remedy" (Doc. # 17, at 20) or, alternatively, (2) because exhaustion would be futile. The first argument lacks merit; the second argument does have merit, but on slightly different grounds than urged by Plaintiffs.

It is true that the damages Plaintiffs seek are not available under the IDEA. "[T]he IDEA does not provide a cause of action for tort-like relief." *Ortega v. Bibb*

---

[3] The Complaint includes allegations that A.M. was denied "educational activit[ies]" and "educational benefits" and that the Board generally abandoned its role to "provide education" to A.M. (Compl. ¶¶ 58, 61.) These allegations on their face relate to A.M.'s education and, absent any contrary argument from Plaintiffs, the court assumes without deciding that the ADA and Section 504 claims fall within the IDEA's purview. *Cf. M.T.V.*, 446 F.3d at 1158–59 ("[Plaintiff's] retaliation claims clearly relate to [the disabled child's] evaluation and education, and, therefore, are subject to the exhaustion requirement."); *see also J.P.*, 218 F. App'x at 913 (observing that the IDEA's provision that "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child," 20 U.S.C. § 1415(b)(6), "appl[ies] to a 'broad' spectrum of claims" (quoting *M.T.V.*, 446 F.3d at 1158)).

*County School District*, 397 F.3d 1321, 1326 (11th Cir. 2005); *see also id.* at 1325 ("Although the IDEA provides various types of remedies for plaintiffs – including restitution for some parental expenses, compensatory education for students, and procedural remedies – the statute does not provide tort-like relief."). But Plaintiffs' brief stops short of providing any authority to support their contention that they may bypass the IDEA's administrative remedies by restricting their prayer for relief to money damages. And there is Eleventh Circuit authority undermining that contention.

In *N.B. v. Alachua County School Board*, 84 F.3d 1376 (11th Cir. 1996), decided on a motion to dismiss, the plaintiff made an argument similar to the one Plaintiffs make. The *N.B.* plaintiffs sought to avoid the IDEA exhaustion requirement by arguing that the money damages they had requested in their lawsuit were not available to them through the school district's administrative process. *Id.* at 1379. The Eleventh Circuit reasoned that accepting the plaintiffs' argument would mean that "future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant." *Id.* Such an avoidance tactic, the Eleventh Circuit continued, was contrary to the core reason for the "exhaustion requirement, which is '[to prevent] deliberate disregard and circumvention of agency procedures established by Congress.'" *Id.*; *see also J.P.*, 218 F. App'x at 914 n.5

(rejecting the plaintiffs' contention that "exhaustion of administrative remedies would be futile because the money damages they seek relate to only past injuries"); *Babicz*, 135 F.3d at 1422 n.10 (noting that "[i]mplicit in th[e] legal strategy to avoid IDEA is an apparent desire for compensatory damages not available under IDEA").

Based upon clear Eleventh Circuit precedent, Plaintiffs cannot avoid IDEA exhaustion simply by restricting their prayer for relief to monetary damages. Accordingly, the court rejects Plaintiffs' first argument against IDEA exhaustion requirements.

Plaintiffs' second argument is grounded in the futility doctrine. Plaintiffs argue that they have alleged a plausible basis for application of the futility exception to the IDEA's exhaustion requirement.  Namely, they assert that they were denied meaningful access to the IDEA's administrative procedures because their daughter's suicide occurred before they knew about the bullying.  But the three cases upon which Plaintiffs rely are not helpful.  In *Papania-Jones v. Dupree*, 275 F. App'x 301 (5th Cir. 2008), the plaintiffs argued futility on the basis that they "did not know of the IDEA's requirement to exhaust all its administrative remedies," but the Eleventh Circuit held that their ignorance was "not a valid excuse." *Id.* at 303.  In *Honig v. Doe*, 484 U.S. 305 (1988), the Supreme Court recognized the futility and inadequacy exceptions to administrative exhaustion.  But beyond pronouncing those general

10

principles, *Honig* does not assist Plaintiffs with their specific plight, and the same can be said about *McPhillips v. Blue Cross Blue Shield of Alabama*, No. 10cv615, 2010 WL 3833950 (M.D. Ala. Sept. 23, 2010), an ERISA case upon which Plaintiffs rely.

The Board argues that this should end the analysis, that Plaintiffs' failure to exhaust the IDEA's administrative remedies requires dismissal, and that it is too late now for Plaintiffs to exhaust administrative remedies "since the decedent is no longer a student." (Doc. # 12, at 10.) Dismissal of the ADA and Section 504 claims for failure to exhaust seems unusually harsh, however. A.M.'s parents have nothing to gain from IDEA's administrative exhaustion requirements, given that their daughter has died. Notwithstanding the lack of further development by Plaintiffs as to their futility argument, the court has explored whether A.M.'s death creates a futility exception to the IDEA's exhaustion requirement.

The court did not find, and the parties do not cite, any Eleventh Circuit decision similar enough to prevent application of the futility exception here. For example, in *N.B.*, the Eleventh Circuit addressed the issue of futility where the parents had removed their child from the public school system. 84 F.3d at 1379. It held, "If parents can bypass the exhaustion requirement of the IDEA by merely moving their child out of the defendant school district, the whole administrative scheme established by the IDEA would be rendered nugatory." *Id.* "Permitting parents to

11

avoid the requirements of the IDEA through such a 'back door' would not be consistent with the legislative intent of the IDEA." *Id.*; *accord Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989) (holding parents may not avoid the state administrative process through the "unilateral act of removing their child from a public school"). Such back door tactics and unilateral parental actions are not at play in view of A.M.'s tragic death.

The decision in *Taylor v. Altoona Area School District*, 737 F. Supp. 2d 474 (W.D. Pa. 2010), however, is analogous factually in its material respects. There, a parent brought an IDEA action against a public school district after her son, Devin, died from a severe asthma attack he suffered in the classroom. The court found that, although the parent did not exhaust any administrative procedures under the IDEA, she was excused from doing so on grounds of futility. "Devin has died, and [his mother] cannot obtain her desired relief through the administrative process." *Id.* at 482. "Once Devin died, it was futile for [his mother] to seek relief through the IDEA's administrative process." *Id.* at 483. In support of its finding, the district court relied on a narrow exception to IDEA exhaustion earlier forecast by the Third Circuit. *See id.* (The Third Circuit has "imagined 'other very narrow exceptions permitting the exhaustion requirement to be waived . . . such as where the parents of a deceased child seek damages for a school board's failure to provide IDEA services

while the child was still alive.'" (quoting *W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995), *abrogated in part on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007))); *but see Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63 (1st Cir. 2002) (holding that the student's graduation did not excuse the parents' failure to exhaust administrative remedies because the parents "could have invoked [the IDEA] at any of several different points during [the student's] high school years").

Under *Taylor*'s rationale, a student's death can be the very reason for implementing the futility exception to IDEA administrative exhaustion. Here, as in *Taylor*, A.M. has died. The possibility of her parents obtaining any IDEA-based relief is an impossibility. Additionally, and importantly, there are no facts in the Complaint that indicate that A.M.'s parents purposefully delayed challenging the effect the bullying had on A.M.'s education in an IDEA administrative process. Hence, this case is distinguishable from *Frazier*, *supra*. At this stage of the proceedings, the court declines to dismiss this action for Plaintiffs' failure to exhaust

the IDEA's administrative remedies.  Accordingly, the Board's motion to dismiss on this ground is due to be denied.[4]

## B.   Count I:  Section 1983 Claim for a Substantive Due Process Violation Under the Fourteenth Amendment

To prevail on their Section 1983 claim, Plaintiffs must establish (1) that the Board deprived A.M. of a right secured by the United States Constitution, and (2) that the Board acted under color of state law.  *See Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998).  Because Plaintiffs sue a local governmental entity for a Section 1983 violation, they must show not only a constitutional deprivation, but also that the Board "is responsible for that violation."  *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997).  The Board's responsibility can attach through the "execution of a government's policy or custom [that] . . . inflicts the injury."  *Id.* (citation and internal quotation marks omitted).

The Board argues that Plaintiffs' Section 1983 claim fails on the first *Arrington* element because Plaintiffs do not allege plausible facts establishing that the Board deprived A.M. of any constitutional rights or owed any duty to protect her.  The first

---

[4] Because Plaintiffs presently are excused from the exhaustion requirement, the court need not reach the Board's argument that Plaintiffs failed to exhaust the IDEA's administrative remedies "within two years of the date they knew about any alleged action by the Board . . . ." (Doc. # 12, at 19.)

task, then, is "to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The Complaint alleges that the Board deprived A.M. of the "right to life" and the "right to bodily integrity" (which Plaintiffs contend includes a right "to be free of restraint, punishment, or physical assault and battery by school officials, and by peers").  (Compl. ¶ 48.)  Although the Complaint fails to identify any constitutional provision, the right to life and the right to bodily integrity arise from the substantive component of the Due Process Clause of the Fourteenth Amendment.  *See generally Albright*, 510 U.S. at 272.

Under the Due Process Clause of the Fourteenth Amendment, no state can deprive "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.   However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  The Board argues that based upon *DeShaney* and its progeny, the Board did not owe a constitutional duty to protect A.M. from harm by other students or ultimately from herself.

In *DeShaney*, a four-year-old boy suffered permanent brain damage inflicted by his custodial father.  The boy's non-custodial mother brought a Section 1983 action against the county's social services department and several of its employees.

She alleged that the defendants deprived her son of his Fourteenth Amendment substantive due process right to be free from "unjustified intrusions on personal security" because they knew about the father's propensity for violence, but failed to intervene and protect the child. *See id.* at 191–93. The Supreme Court held that the Due Process Clause does not impose an affirmative duty on the government to guarantee "certain minimal levels of safety and security." *Id.* at 195. This is true even where governmental "aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

As in *DeShaney*, A.M.'s tormentors are private actors, her peers. Plaintiffs seek to hold the Board liable for its failure to take affirmative steps to prevent those private actors from bullying her and ultimately to prevent A.M.'s suicide. *DeShaney* makes clear, however, that the Board had no affirmative duty in these circumstances. *DeShaney* establishes that a State's failure to act, even when the State knows harm may occur absent its intervention, is not enough to state a substantive due process violation.

Plaintiffs fail to acknowledge *DeShaney*'s import or even to cite it. Impliedly, however, they make two attempts to avert it. First, Plaintiffs argue that this case

"lends itself to eventual proof that the [Board's] conduct (as distinguished from the conduct of the bullying perpetrators) was egregious" in the constitutional conscience-shocking sense.   (Doc. # 17, at 15–16.)   Second, Plaintiffs devote substantial discussion to the argument that the Board is liable for its unconstitutional policies or customs, including the Board's failure to train and supervise its employees on the dangers of bullying.   (*See* Doc. # 17, at 6–12.)   Neither argument averts *DeShaney*'s holding.

As to Plaintiffs' first argument, "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009).   Arbitrary or conscience-shocking conduct creates an exception to *DeShaney*'s general rule where non-custodial relationships are at issue.[5] *See generally Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) (discussing this exception in the context of *DeShaney* and its progeny).

---

[5] Plaintiffs do not allege or argue, nor could they do so successfully, that A.M. was in a custodial relationship with the Board.  *See Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002) ("[S]choolchildren are not in a custodial relationship with the state."); *see also Davis*, 555 F.3d at 982 n.2 (noting that "compulsory school attendance laws do not constitute a restraint on personal liberty" sufficient to establish a custodial relationship between a student and a school so as to give rise to an affirmative duty of protection under the Due Process Clause's substantive component).

The standard has a high threshold, and even allegations of "deliberate indifference"

do not satisfy its demands:

> The concept of conscience-shocking conduct duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability.  The Supreme Court has made clear the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.  Thus, the Fourteenth Amendment is not a font of tort law that can be used, through section 1983, to convert state tort claims into federal causes of action.  To rise to the conscience-shocking level, conduct most likely must be intended to injure in some way unjustifiable by any government interest.

*Davis*, 555 F.3d at 982 (internal citations and quotation marks omitted); *see also Nix*

*v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1376 (11th Cir. 2002) (observing that

courts must remain vigilant "to prevent the Fourteenth Amendment from becoming

a surrogate for conventional tort principles").

In *Davis*, the Eleventh Circuit observed that, in the school setting,  it had found

conscience-shocking conduct viable as a substantive due process claim in only two

cases, both involving excessive corporal punishment.  *See* 555 F.3d at 983 (citing

*Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000), and *Kirkland v.*

*Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003)).  It explained:

> In *Neal*, the court concluded a high school coach's conduct rose to the level of a constitutional violation.  229 F.3d at 1076.  There, the coach intentionally struck a student with a metal weight lock, knocking the

18

student's eye out of its socket, as a form of punishment for his
involvement in a fight with another student. *Id.* at 1071. In finding a
violation of the student's substantive due process rights, the court
reasoned that the school official "intentionally us[ed] an obviously
excessive amount of force that presented a reasonably foreseeable risk
of serious bodily injury." *Id.* at 1076. Importantly, it made clear the
claims of excessive corporal punishment shaped the outcome. *Id.*
Similarly, in *Kirkland v. Greene County Board of Education*, 347 F.3d
903 (11th Cir. 2003), the court concluded a high school principal
violated a student's constitutional rights after he struck the student with
a metal cane in the head, ribs, and back for disciplinary reasons. *Id.*
at 904–05.

*Id.* at 982.

The perpetrators in *Neal* and *Kirkland* were teachers, state actors. Both *Neal*

and *Kirkland* involved direct, intentional physical abuse by a state actor that resulted

in immediate and severe physical injuries to a student. Here, the allegations do not

involve a teacher's or other school official's intentional acts of physical abuse against

a student. Rather, as stated, the perpetrators of the bullying were not state actors.

They were A.M.'s classmates, and, as tragic as it is, A.M.'s death was self-inflicted.

The absence of state-occasioned, affirmative, and intentional conduct distinguishes

this case, not only from *Neal* and *Kirkland*, but also from the Fifth Circuit decisions

upon which Plaintiffs rely.[6]

---

[6] Plaintiffs cite *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994),
and *Jefferson v. Ysleta Independent School District*, 817 F.2d 303 (5th Cir. 1987). The
substantive due process violations arose in *Doe* from a claim that a *teacher* had sexually harassed
students and, in *Jefferson*, from a claim that a *teacher* had strapped a student to a chair.
Moreover, in *Doe*, in finding a substantive due process violation, the Fifth Circuit distinguished

Moreover, Plaintiffs' reliance on the Board's failure to act will not suffice to state a substantive due process claim. To this end, the court has considered the nature of the peer-to-peer bullying conduct targeting A.M. – which included, but was not limited to, the "pig races," repeated instances of name-calling, an incident where A.M. was locked in a janitor's closet, and another incident where A.M. was "de-pantsed" – and assumes as true that the Board knew about most, but did nothing in response. However, in light of the high bar for satisfying the conscience-shocking, constitutional standard, as illustrated by *Neal* and *Kirkland*, the court finds that the Board's inaction simply does not rise to the level of conscience-shocking as a matter of law.

The allegations with respect to the Board's failure to act demonstrate at most deliberate difference on the part of the Board, not conduct "intended to injure in some way unjustifiable by any government interest." *Davis*, 555 F.3d at 982. Other courts also have concluded that allegations similar to those Plaintiffs allege fall short of establishing conscience-shocking conduct sufficient to state a substantive due process violation, and Plaintiffs do not cite any persuasive case law that supports a contrary finding. *See, e.g., Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 62 (2d Cir. 2007)

---

*DeShaney* on the ground that in *DeShaney*, the "child was rendered comatose by injuries inflicted by his own father, a private (as opposed to state) actor." 15 F.3d at 451 n.3.

(The school defendants' "failure to respond to the harassing and bullying to which Jeremy was subjected (taking Plaintiffs' assertions to be true), while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience" (citation and internal quotation marks omitted)); *Long v. Murray Cnty. Sch. Dist.*, No. 4:10cv15, 2012 WL 2277836, at *24 (N.D. Ga. May 21, 2012) (Allegations that the school district failed "to train and provide adequate protection for Tyler, despite actual knowledge of his disability and pervasive bullying, at best establish negligence or deliberate indifference," not arbitrary or conscience-shocking conduct in a constitutional sense.); *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1173 (D. Colo. 2001) ("[T]he School Defendants' alleged toleration of bullying, teasing, and intimidation on the part of the Columbine student body, while reprehensible if true, is not conscience shocking in a Fourteenth Amendment substantive due process sense."). All in all, the allegations that the Board failed to prevent the bullying A.M. suffered, even if that failure is regrettable, does not shock the conscience in a constitutional sense under the strict Eleventh Circuit standard.

Finally, to the extent that there are allegations of state-action corporal punishment, those allegations are at best peripheral. The Complaint alleges only that school officials "criticized" A.M. when she was late to class and subjected her to an

21

indeterminate number of detentions and time-outs.  (Compl. ¶ 59.)  It fails to allege, however, that a school official used any amount of force in punishing A.M., much less used force that presented a reasonably foreseeable risk of serious bodily injury. *See Neal*, 229 F.3d at 1075 (setting forth what facts, at a minimum, a plaintiff must allege to state a claim for excessive corporal punishment that equates to arbitrary or conscience-shocking behavior).  In sum, there are no plausible facts from which to infer conscience-shocking conduct by the Board.

At bottom, Plaintiffs contend that third-parties' intentional bullying acts subjected A.M. to a risk of harm that the Board failed to prevent.  The Board's liability hinges on whether it owed a substantive-due-process duty to protect A.M. from third-party bullying or from her own suicide.  No matter how tragic these events, the Board did not owe a duty.  This brings the discussion back full circle to *DeShaney*.

On the facts alleged, *DeShaney* does not extend a substantive due process right to A.M. or impose a corresponding duty of protection on the Board.  Rather, *DeShaney* establishes that the Board did not have a substantive due process duty to protect A.M. against the bullying conduct of her peers or from her own suicide, and "its failure to do so – though calamitous in hindsight – simply does not constitute a violation of the Due Process Clause."  489 U.S. at 202.  For these reasons, Plaintiffs

fail to allege that the Board deprived A.M. of a right secured by the United States Constitution.

In light of this finding, Plaintiffs' second argument – that the Board's failure to train its employees on the dangers of bullying – cannot revive the substantive due process claim. The Eleventh Circuit's decision in *Wyke v. Polk County School Board*, 129 F.3d 560 (11th Cir. 1997), is controlling. There, the court held that a school board did not violate the substantive due process rights of its student by failing to protect him from committing suicide at home. *See id.* at 568–70. There was no constitutional violation, even though the school board knew, but did not tell the parents, that the student had made two failed attempts at suicide while at school. *See id.*

The *Wkye* plaintiff argued that she had a cognizable Section 1983 claim on the basis that the school board's "failure to train its employees in suicide prevention and intervention constituted deliberate indifference to [the student's] substantive due process rights." *Id.* at 568. But the Eleventh Circuit concluded that the plaintiff "could not escape the import of *DeShaney* by relying on *Canton*'s failure to train theory." *Id.* (citing *Canton v. Harris*, 489 U.S. 378 (1989)). That is, before the Eleventh Circuit could address the school board's liability for a failure to train its employees, it had to determine whether there was an underlying constitutional

violation committed by any of the board's employees.  *See id*. at 568–69.  The Eleventh Circuit held that *DeShaney* required it to answer the first question in the negative.  *See id.* at 569.  Hence, it did not reach the second question.  *Id.*; *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) ("Analysis of a state entity's custom or policy [of failing to train its employees] is unnecessary . . . when no constitutional violation has occurred.").

Plaintiffs fail to allege plausibly that the Board deprived A.M. of her constitutional rights.  Absent any constitutional violation, the court need not explore whether the allegations pertaining to the Board's training policies or customs concerning anti-bullying violated A.M.'s constitutional rights.  Thus, as in *Wyke*, the court need not reach Plaintiffs' failure-to-train arguments.  *See* 129 F.3d at 568–69.

In sum, the allegations fail to allege a Section 1983 claim that is "plausible on its face."  *Bell*, 550 U.S. at 570.  Accordingly, the Board's motion to dismiss the Section 1983 claim is due to be granted.

**C.**   **Counts II and III:  The ADA and Section 504 Claims**

Counts II and III allege ADA and Section 504 claims.[7]  Under Section 504, Plaintiffs must prove that the Board "intended to discriminate against [A.M.] on the basis of [her] disability."  *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 604 (11th Cir. 2010) (citation and internal quotation marks omitted).  The ADA implements the same rule of nondiscrimination as Section 504.  *See id.* (observing that "the same standards govern discrimination" under Section 504 and the ADA).  The court will analyze the ADA and Section 504 claims together as the parties have.

To prevail under the ADA or Section 504, a plaintiff must prove that he or she (1) had an actual or perceived disability, (2) qualified for participation in the program, (3) was discriminated against because of his or her disability, and (4) the relevant program is receiving federal financial assistance.  *See L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty.*, 516 F. Supp. 2d 1294, 1301 (S.D. Fla. 2007); *see also Long*, 2012 WL 2277836, at *25.

---

[7] The ADA and Section 504 address discrimination against disabled students.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 likewise provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

The Board contends that for pleading purposes, there are insufficient allegations establishing that the Board engaged in any intentional acts of discrimination against A.M. based upon her alleged disabilities.  (Doc. # 12, at 6.) It argues that the allegations fail under even the lenient deliberate indifference standard the Eleventh Circuit identified in *Wilson*.  *See* 610 F.3d at 604 (observing that "[t]his Court has not decided whether to evaluate claims of intentional discrimination under section 504 under a standard of deliberate indifference or a more stringent standard of discriminatory animus").  Plaintiffs respond that the Board has an affirmative duty under the ADA and Section 504 to address disability bullying (or harassment) about which it knows or should have known.  (Doc. # 17, at 17.) Plaintiffs urge a theory of liability that emanates from the Sixth Circuit's decision in *S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008).  Discussion of *S.S.* is helpful to the analysis.

*S.S.* involved ADA and Section 504 claims that the school district had failed to protect a disabled student from a hostile learning environment created by peer-on-peer harassment.  Aligning with other federal district courts that had confronted the issue, the Sixth Circuit applied the analytical framework established in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), a peer-on-peer sexual harassment case brought under Title IX of the Education Amendments of

26

1972, 20 U.S.C. § 1681(a).  *Davis* held that under Title IX, "schools 'are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'"  *S.S.*, 532 F.3d at 454 (quoting *Davis*, 526 U.S. at 650).  Incorporating *Davis*'s deliberate indifference theory, the Sixth Circuit required the plaintiff to establish five elements:

> (1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment.

*Id.*

Neither Plaintiffs nor the Board cites an Eleventh Circuit decision that has applied the standard in the school context, when peer-to-peer disability harassment is alleged under the ADA or Section 504,[8] and the court found none.  Based upon this posture and for present purposes, the court will apply the same test applied by the Sixth Circuit court to determine whether Plaintiffs' ADA and Section 504 claims are plausible.

---

[8] In its reply brief, the Board does not address Plaintiffs' theory of liability, but rather argues mistakenly that Plaintiffs failed to respond to its ADA and Section 504 arguments.

The present analysis assumes, because the Board's argument seems to make the same assumptions, that A.M. had a qualifying disability (element one), that the peer-to-peer harassment was based on A.M.'s disability (element two), and that the peer-to-peer harassment was sufficiently severe or pervasive that it altered the condition of A.M.'s education (element three).  As to elements four and five, there is a sufficient factual basis to make the claim plausible.

Plaintiffs allege that the Board had "actual notice and knowledge" of the pervasive bullying events that targeted A.M.   (Compl. ¶ 51.)  Other allegations amplify the sources of the Board's actual notice.  Namely, the Complaint alleges that school administrators, staff, and teachers observed firsthand "a variety of bullying activities directed at" A.M., that A.M.'s peers bullied A.M. in "plain view" and some times "right in front of the school office," that A.M. reported some of the bullying, and that the school bus driver joined other students in taking "perverse delight" in watching the "pig races" of which A.M. was a target.   (Compl. ¶¶ 47, 48.) Furthermore the Complaint alleges that Board did nothing to prevent the bullying, and that its teachers even had accused A.M. of having a "bad attitude" when she complained about the bullying.   (Compl. ¶ 44.)

In light of these allegations, Plaintiffs have sufficiently alleged that the Board acted with deliberate indifference to the peer-on-peer harassment of A.M. and "that

it had an attitude of permissiveness that amounted to discrimination." *S.S.*, 532 F.3d at 456; *cf. Davis*, 526 U.S. at 653 (reversing the district court's grant of the school's motion to dismiss where the harassment was reported to school authorities, but no disciplinary action was taken in response and no effort was made to separate the harasser from the plaintiff). Accordingly, the Board's motion to dismiss Plaintiffs' ADA and Section 504 claims is due to be denied.

## D.   **Other Arguments**

### *1.   Proper Party Plaintiffs*

The Board argues that Plaintiffs, as A.M.'s "statutory beneficiaries," are not proper parties to commence this action because they have not demonstrated either that "there is an actual estate" for their deceased daughter or that they are the personal representatives of her estate. (Doc. # 12, at 17, 18 (quoting Compl. (caption).) Curiously, Plaintiffs' response to the motion to dismiss does not address the Board's challenge to their capacity to bring this suit. Nonetheless, the court finds that there are plausible allegations that Plaintiffs have the capacity to sue and, thus, the allegations survive Rule 12(b)(6) scrutiny.

Alabama's general wrongful death statute authorizes a "personal representative" to sue for the decedent's death caused by the "wrongful act, omission, or negligence" of another. Ala. Code § 6-5-410(a) (2011). Although Section 6-5-

410(a) does not define "personal representative," the Supreme Court of Alabama has "interpreted the phrase to include 'executors and administrators.'" *Affinity Hosp., L.L.C. v. Williford*, 21 So. 3d 712, 715 (Ala. 2009) (quoting *Waters v. Hipp*, 600 So. 2d 981, 982 (Ala. 1992)).  And it is well settled under Alabama law that "[o]ne who sues under [Section 6-5-410] without having been appointed executor or administrator does not qualify under this section as a personal representative, and the suit is a nullity." *Waters*, 600 So. 2d at 982.

Based upon the foregoing authority, Plaintiffs cannot bring this suit under § 6-5-410 as A.M.'s "statutory beneficiaries."  They can sue, however, as the personal representatives of A.M.'s estate.  True, Plaintiffs fail to plead that they are the "personal representatives" of A.M.'s estate.  However, they allege that they are both "entitled to sue under § 6-5-410" and "authorized to act" on behalf of A.M.'s estate. (Compl. ¶ 1.)  Construed in Plaintiffs' favor, these allegations reasonably imply that Plaintiffs are the estate's appointed executors or administrators and, thus, the personal representatives within the meaning of Section 6-5-410.

At this juncture, the allegations are sufficient to deny the motion to dismiss. Discovery will bear out whether Plaintiffs are in fact qualifying personal representatives of an established estate, and if Plaintiffs are unable to substantiate

their allegations with proof, Defendants will have the opportunity to raise this issue again in a properly supported summary judgment motion.

### 2. Survivorship of the ADA and Section 504 Claims

The Board contends that the ADA and Section 504 claims do not survive A.M.'s death.  But the holding of the sole case it cites involved Section 1983 excessive force claims that did not allege that the relevant death resulted from the use of force. *See Gilliam v. City of Prattville*, 639 F.3d 1041 (11th Cir. 2011).  The Board offers no good reason why *Gilliam* would apply in an ADA/Section 504 case where the claims allege that the defendants' illegal discrimination caused the decedent's demise. *See id.* at 1047 (noting that "when a constitutional violation actually causes the injured party's death, a Section 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code § 6-5-410").  Absent any other authority or argument from the Board, the court declines to dismiss the ADA and Section 504 claims on the basis that Plaintiffs cannot bring a survivorship claim.  Further analysis of this issue at a later date may be necessary, if properly raised.

### 3. Punitive Damages

The Board challenges Plaintiffs' request for punitive damages to the extent that Plaintiffs seek such damages under the ADA and Section 504.  The Supreme Court has held that punitive damages are not available under Title II of the ADA or Section 504. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  Based upon *Barnes*, and there

being no serious opposition from Plaintiffs (*see* Doc. # 16 ¶ 4), the Board's motion to dismiss the ADA and Section 504 punitive damages request is due to be granted.

## V. CONCLUSION

Plaintiffs' Section 1983 claim does not survive the motion to dismiss because Plaintiffs fail to allege that the Board deprived A.M. of a Fourteenth Amendment substantive due process right.  Their ADA and Section 504 claims alleging disability harassment do survive, but not the attendant request for punitive damages. Accordingly, it is ORDERED that Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

(1)    The motion to dismiss the Section 1983 claim is GRANTED;

(2)    The motion to dismiss the ADA and Section 504 claims is DENIED; and

(3)    The motion to dismiss the punitive damages request on the ADA and Section 504 claims is GRANTED.

DONE this 27th day of March, 2013.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE